TRUSTEES OF BAZETTA TOWNSHIP ET AL., APPELLEES, *v.* CITY
OF WARREN ET AL., APPELLANTS.

(No. 2250—Decided March 31, 1975.)

COOK, J. This is an appeal from a judgment of the
Court of Common Pleas. The facts are not in dispute. A
petition for annexation to the city of Warren of approxi-
mately 1,060 acres of land in the unincorporated portions
of Trumbull County was presented to the board of county
commissioners on July 22, 1974. The petition was signed
by a majority of the fifty-seven property owners within the
territory which was the subject of the petition. The pre-
scribed public hearing was advertised for October 17, 1974,
by the board of commissioners and notices of the filing of
the petition and the date of the public hearing were sent
to the affected townships.

Four days before the scheduled public hearing, the
plaintiffs, the appellees herein, filed a complaint in the
Court of Common Pleas seeking an injunction to prevent
the board of county commissioners from hearing the pe-
tition for annexation filed by the property owners. After
the granting of a temporary restraining order, the trial
court set the matter down for a hearing on a motion to dis-
miss, filed by the defendants, or upon the merits. On Octo-
ber 28, 1974, the earlier ordered hearing was held. Al-

though no evidence was introduced, certain stipulations were agreed to by the parties.

After the arguments by counsel and a consideration of the trial briefs, the trial judge entered a judgment entry on November 4, 1974, declaring R. C. 709.02 through 709.-07 unconstitutional and permanently enjoining the proceedings of the board of county commissioners with respect to the proposed annexation. It is from this judgment that an appeal has been timely taken to this court.

The defendants filed one assignment of error, to-wit:

"The Court of Common Pleas, Judge G. Warren Bettes, by special assignment erred as a matter of law in declaring Sections 709.02 through 709.07 of the Ohio Revised Code unconstitutional, and also erred in permanently enjoining annexation proceedings."

In the absence of constitutional limitations, it is generally considered that the power of a state legislature over the boundaries of the municipalities and counties of the state is absolute and that the legislature has power to extend the boundaries of a municipal corporation, or to authorize an extension of its boundaries, without the consent of the inhabitants of the territory annexed or even against their express protest.

One of the landmark cases upholding the power of a state legislature to so act is *Hunter* v. *Pittsburgh*, 207 U. S. 161, in which the Supreme Court of the United States said at 178:

"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold

or manage such property, or exempting them from taxation upon it, constitutes a contract with the state within the meaning of the Federal Constitution. The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislatve body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. *Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it.*" (Emphasis added.)

This same role was pronounced earlier by the United States Supreme Court in *Atty. Gen., ex rel. Kies, v. Lowrey*, 199 U. S. 233, where it said, at 239:

"* * * It is there [*Lamarie County v. Albany County*, 92 U. S. 307, 23 L. ed. 552] said in many ways, with citation of many supporting cases, that the legislature of the state has absolute power to make and change subordinate municipalities."

In Ohio, the state legislature has, by the provisions of R. C. 709.02 through 709.07, provided means by which a municipality may expand its municipal borders, but appellees contend such sections, providing for annexation, constitute a taking of property without due process of law in violation of the United States and Ohio Constitutions.

As to property owners within the area to be annexed,

it is well settled, as pointed out above, that the legislature may not only originally fix the boundaries or limits of a municipal corporation, but, subject to constitutional restriction, may subsequently annex or authorize the annexation of contiguous or other territory without the consent or even against the remonstrance of persons residing therein (*Hunter* v. *Pittsburgh, supra; Kelly* v. *Pittsburgh,* 104 U. S. 78; *Koplin* v. *Village of Hinsdale,* No. 73-C-947, U. S. District Court for the Northern District of Illinois; *Blanchard* v. *Bissell,* 11 Ohio St. 96 at 100).

It has been held by several state and federal courts that the annexation of land by the legislature without assent of or notice to the inhabitants is not a denial of due process of law. (*Cedar Rapids* v. *Cox,* 250 Iowa 457, 93 N. W. 2d 216; *In re Detachment of Lands,* 183 Minn. 164, 236 N. W. 195; *Doyle* v. *Municipal Comm. of Minnesota* [D. Minn.], 340 F. Supp. 841.)

Indeed, the state may authorize the extension of the territorial area of a municipal corporation with or without the consent of the citizens or even against their protest, unrestrained by any provision of the federal constitution (*Hunter* v. *Pittsburgh, supra; Cedar Rapids* v. *Cox, supra,* appeal dism. 359 U. S. 498.)

As to the township trustees, Ohio courts have held that to challenge an annexation, a person must own property within the territory sought to be annexed (*Weber* v. *Williams,* 32 Ohio App. 2d 65, 67; *Dayton* v. *McPherson,* 57 Ohio Op. 2d 361).

In the *Weber* case, *supra,* the Court of Appeals for Defiance County specifically held that a board of trustees were not "person(s) interested" in an annexation proceeding since they did not own property within the area sought to be annexed. Here again, the state legislature has the absolute power to prescribe annexation procedures.

As to those residing in the unaffected portions of the townships, we are of the opinion they do not qualify as "person(s) interested" for the reasons set forth above as to township trustees, but while the legislature has the power to provide for or authorize the annexation of terri-

tory without the consent of the inhabitants residing therein, it may, and usually does, provide for such consent as a condition of annexation.

In Ohio, the legislature requires the signatures on a petition of a majority of the land owners of the area sought to be annexed (R. C. 709.02) and requires a public hearing at which any person may appear and express his views or submit an affidavit to the same effect. Beyond this, the Ohio legislature has not seen fit to go for an expression of consent or lack of same to the proposed annexation.

Such limited expression of consent or opposition to the annexation, however, is constitutional because: *"The power is in the state and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it."* (*Hunter* v. *Pittsburgh, supra*, at 179.) (Emphasis added.)

In the finding by the trial court that R. C. 709.02 through 709.07 are unconstitutional because of an unconstitutional delegation of legislative power to the board of county commissioners in violation of Section 1, Article II; Section 26, Article II; Section 1, Article X; and Section 2, Article XVIII, of the Ohio Constitution, we find no merit.

It is the general rule that in order to avoid an unconstitutional delegation of power, the legislature must provide rules of conduct. It must declare the policy of the law and fix the legal principles which are controlled in given cases by setting up standards to guide the administrative agency in the exercise of its discretion (*Matz* v. *J. L. Curtis Cartage Co.*, 132 Ohio St. 271; *Akron & B. Belt Rd. Co.* v. *Public Util. Commn.*, 148 Ohio St. 282; *Weber* v. *Board of Health*, 148 Ohio St. 389; *American Cancer Society, Inc.*, v. *Dayton*, 160 Ohio St. 114).

The Supreme Court of Ohio in *Lariccia* v. *Board of Commrs.*, 38 Ohio St. 2d 99, held, at 101:

"[R. C. 709.033 established] * * * specific standards to be applied by the board to the evidence before it in annexation proceedings, and grants to the board the discretion to make only those factual determinations specifically called for in the statute."

Therefore, there was no unconstitutional delegation of

152

legislative power. We find no authority for any of the alleged violations of the Ohio Constitution. Accordingly, we reverse the judgment of the trial court, dismiss the permanent injunction and enter final judgment for the defendants.

*Judgment reversed.*

HOFSTETTER, P. J., and DAHLING, J., concur.