IN RE CHAR.

(No. 5844—Decided August 1, 1978.)

*Mr. Robert N. Farquhar,* for appellants.
*Mr. Robert E. Albright* and *Mr. Richard C. Brahm,* for appellees.

WILEY, J.   The appeal herein is from the judgment of the Common Pleas Court of Montgomery County, whereby the decision of the Board of County Commissioners of Montgomery County denying the annexation of 63.754 acres of land in Butler Township to the city of Dayton was reversed and the petition for annexation was granted.

The petition for annexation herein was filed with the Montgomery County Board of Commissioners by the three owners of the territory sought to be annexed—namely, Inland Steel Development Corporation, Frederick E. Gagel, and O. B. Scharrer.   Anthony B. Char was appointed by the petitioners as their appointed agent, as required by R. C. 709.02.   On August 26, 1976, the board adopted resolution No. 2661 denying the annexation, which reads in pertinent part as follows:

"Now, Therefore, Be It Resolved by the Board of County Commissioners of Montgomery County, Ohio, that it finds:

"1. There are 3 owners of real estate in the territory sought to be annexed, of which 3 signed the petition.

"2. A full description and accurate map or plat of the area was submitted.

"3. A statement of the total number of owners of real estate in the area was submitted.

"4. The name of a person, or persons, to act as Agent was submitted.

"5. Proper notice, as required by law, was given.

"6. That the names on the petition are owners or (*sic*) real estate in the territory sought to be annexed and at the time of filing the number of valid signatures did constitute a majority of the owners of real estate in the territory sought to be annexed.

"7. The area sought to be annexed is not unreasonably large.

"8. The description and map or plat are accurate.

"9. The general good of the territory sought to be annexed would not be served pursuant to the petition inasmuch as there was no evidence before the Board of County Commissioners that would indicate that the City of Dayton could better serve the area sought to be annexed than Butler Township is presently serving."

Thereafter, a timely appeal was filed in the Common Pleas Court of Montgomery County, pursuant to R. C. Chapter 2506. Twenty-three persons, twelve of whom reside in an apartment complex located within the territory in question and 11 of whom reside upon land adjacent thereto, sought by motion to intervene in the appeal. This motion was granted as to the 12 residents within the territory sought to be annexed and were considered by the trial court as appellees in that they were opposed to disturbing the decision of the commissioners.

In an appeal brought under R. C. Chapter 2506, the trial court may determine whether the order appealed from is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence. Prior to the enactment of R. C. 709.033, in 1967, County Commissioners were given broad and practically unlimited discretion by the state

legislature to grant or deny a petition for annexation. *Dabkowski* v. *Baumann* (1963), 175 Ohio St. 89; see former R. C. 709.03 and former R. C. 707.07; see also *State, ex rel. Dickerson,* v. *Rike* (1960), 113 Ohio App. 228, in which the trial court upheld a denial of annexation by the County Commissioners even though the petition was subscribed by all the resident freeholders of the territory proposed to be annexed, and Whiteside, *A Critique on Municipal Annexation in Ohio,* 21 Ohio St. L. J. 364 (1960). By amendment to the Revised Code sections dealing with annexations in 1967 and 1969, the discretion to be exercised by Boards of County Commissioners in such proceedings was substantially curtailed. R. C. 709.033; *Lariccia* v. *Board of Commrs.* (1974), 38 Ohio St. 2d 99. It is also noted that prior to 1967, R. C. 709.02 referred to the fact that the "*inhabitants* residing on territory adjacent to municipal corporations may, at their option, cause such territory to be annexed * * *." (Emphasis added.) The wording as to *inhabitants* was retained in the 1967 amendment; however, by further amendment effective November 21, 1969, R. C. 709.02 was amended to read in this respect "the *owners of real estate* adjacent to * * *."

In the case at bar, the County Commissioners found all the substantive and procedural statutory prerequisites for annexation to be present, except it found that the general good of the territory would not be served if annexation were approved. Particular reference is made to item 9 of the resolution of the Board of County Commissioners of Montgomery County, to wit: "The general good of the territory sought to be annexed would not be served pursuant to the petition inasmuch as there was no evidence before the Board of County Commissioners that would indicate that the city of Dayton could better serve the area sought to be annexed than Butler Township is presently serving." The trial court stated in its detailed decision and entry, which we quote with approval, to wit:

"The Court is unable to sustain such a finding. Within the record there is evidence that, (1) The City will, upon annexation, provide a higher level of certain existing governmental services, (2) certain additional services not

heretofore available within the territory will be available by annexation, and (3) annexation is commercially advantageous to all of the petitioning owner-appellants."

The trial court proceeded to point out that the fire chief of the city of Dayton testified regarding the fire services available upon annexation and indicated that the high rating of the Dayton Fire Department was superior to the rating of the Butler Township Volunteer Fire Department. The trial court further referred to the informal resolution of the city of Dayton detailing the various services it would provide to the area upon annexation. Representatives of the city also testified before the Board of County Commissioners of Montgomery County concerning the other numerous services that would be provided, including waste collection, street lighting and maintenance, water and sanitary sewerage, engineering, parks and recreation, and 24-hour police service. Upon our consideration of the record of the proceedings before the Board of County Commissioners of Montgomery County, we find that the record sustains the trial court's findings that the general good of the territory in question will be served by annexation.

As noted by the trial court, we also call attention to the recent case of *In re Char*, unreported, Second Appellate District, No. 5472, rendered in 1977, wherein the Court of Appeals of Montgomery County affirmed a Common Pleas Court decision reversing a denial of annexation of property to the city of Dayton. This court stated:

"In considering this question we cannot minimize the fact that the Commissioners failed to recognize the petitioners as the owners and as owners of all the territory involved (*sic*). These owners by affidavits stated that annexation would serve the general good of the territory and that services available thereby would enhance the value of their property. Since they represented all owners, no property owner was opposed and no property owner spoke against the issue."

Continuing, this court stated:

"In *Lariccia* v. *Board of County Commissioners*, 38 Ohio St. 2d 99, the Supreme Court considered this new stat-

ute and provided a determinative guide, as to its meaning and purpose. The good of the territory to be annexed is identified as a significant factor. The effect upon other territory is not an element in the statutory mandate to the Commissioners. Here and in all annexations there is the ever present effort of a municipality to enlarge and the anguish of the subdivision encroached. However, the good or evil to either is not one of the statutory considerations for annexation. This is interesting because in *Lariccia*, other than the customary benefits of improved services, the specific good to the single owner of the territory was the opportunity to obtain a license from the State Liquor Board which in turn would enhance the value of the owner's business operation. This novel personal benefit was sufficient, though not necessarily alone, to qualify as general good of the territory under the statutory language and to require the mandated annexation."

Likewise in the case at bar, the personal benefit to the sole owners of the territory to be annexed is sufficient, though not necessarily alone, to qualify as general good of the territory under the statutory language and to require the mandated annexation.

There is one factual difference in the case at bar from the facts in *Lariccia* and the unreported *Char* case, to wit: In both cases there were no residents who were opposing the annexation, whereas in the case at bar there are residents of the territory to be annexed who are opposing the annexation although *these residents are not owners.*

The trial court addressed this very issue as to how much weight and significance is given by law to the intervening-appellees, the lessee-residents within the affected acreage. This court adopts the reasoning and the statement of the trial court in this regard, as follows:

"Although these appellees were, upon motion, properly permitted to intervene in this appeal as ' interested persons' the court concludes that their interests are substantially outweighed by the interests of the petitioning landowners."

*Cf. In re Lariccia, supra,* at 102:

"Although the implications for the community to

which the property in question would be annexed may well be of some consequence, the clear statement of the General Assembly in R. C. 709.033 cannot be ignored. That statute directs that the ultimate focus of annexation proceedings be on 'the general good of the territory sought to be annexed,' and requires granting of the petition when it is shown that such benefit will result."

See also *In re Kucharski*, unreported, Second Appellate District, No. 5083, decided 1977.

The legislature, by specifically amending, in 1969, the wording of R. C. 709.02 to read "owners" instead of "inhabitants" indicates the legislative intent to give great preference to *owners of real estate* adjacent to a municipal corporation rather than to the *inhabitants of real estate* adjacent to municipal corporations, in respect to annexation proceedings.

Arguably, when the amendments by the legislature were made in 1967 and 1969 to correct, in part, the inadequacies, the inequities, and the ambiguities existing under the former statutes relating to annexation, the legislature went too far and has disregarded totally the equities in regard to the inhabitants of the territory to be annexed as well as disregarding the welfare of the inhabitants of areas adjacent to the territory to be annexed. On balance, if this is actually the case, and if in correcting one situation the legislature has created other inequities, it is desirable that the legislature correct these inequities rather than for this court to attempt to do so.

We, therefore, conclude that the judgment of the Common Pleas Court of Montgomery County, reversing the decision of the Board of County Commissioners of Montgomery County, and ordering the annexation, was lawful, and we affirm.

*Judgment affirmed.*

Kerns, P. J., and McBride, J., concur.

Wiley, J., retired, of the Sixth Appellate District, was assigned to active duty in the Second Appellate District under authority of Section 6(C), Article IV, Constitution.